UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TONY L. BROOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:14CV108 ACL |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Tony L. Brooks brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Brooks alleged that he was disabled because of heart disease and high blood pressure. (Tr. 179.)

An Administrative Law Judge (ALJ) found that, despite Brooks' severe heart impairment, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I. Procedural History

On August 11, 2011, Brooks filed an application for DIB, claiming that he became unable to work due to his disabling condition on June 26, 2008.[1] (Tr. 119-25). Brooks' claim was

---

[1]Brooks amended his alleged onset of disability date to October 14, 2011 at the administrative

denied initially. (Tr. 66-67.)  Following an administrative hearing, Brooks' claim was denied in a written opinion by an ALJ, dated August 20, 2013. (Tr. 13-21.)  Brooks then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on October 30, 2014, after considering additional evidence. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Brooks claims that the Appeals Council erred in denying his request for review when new and material evidence was submitted to the Appeals Council from cardiologist Dr. Pervez Alvi that supports a finding of disability.

## II. The ALJ's Determination

The ALJ found that Brooks met the insured status requirements of the Social Security Act through December 31, 2015, and that he has not engaged in substantial gainful activity since his alleged onset date of October 14, 2011. (Tr. 15.)

In addition, the ALJ concluded that Brooks' coronary artery disease ("CAD")[2] requiring stent placement in the right coronary artery was a severe impairment. *Id.* The ALJ found that Brooks did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.)

As to Brooks' RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant must be able to alternate between sitting, standing, and

---

hearing. (Tr. 163.)
[2]Narrowing of the lumen of one or more of the coronary arteries, usually due to plaque buildup in the coronary arteries. *Stedman's Medical Dictionary*, 554 (28th Ed. 2006).

> walking every forty-five minutes for up to five minutes without
> leaving the workstation.   He can occasionally climb ramps, stairs,
> ladders, ropes, and scaffolds.   He can occasionally balance, stoop,
> kneel, crouch, and crawl.   He should avoid concentrated exposure
> to temperature extremes.   The claimant is limited to simple,
> routine, and repetitive tasks.   He should not work at production rate
> work tasks, but should be in a low-stress work environment that
> does not require fast-paced work.   The claimant would need to take
> an additional break or have non-productive time of fifteen minutes
> twice per day on a consistent basis.

(Tr. 16.)

The ALJ found that Brooks' allegations regarding his limitations were not entirely credible.   (Tr. 17-18.)   The ALJ stated that Brooks' subjective complaints were out of proportion to the objective medical evidence, and noted that Brooks stopped working for reasons not related to his alleged disability.   (Tr. 18.)

The ALJ further found that Brooks was unable to perform any past relevant work.   (Tr. 19.)   There were other jobs (laundry worker, office clerk, and cleaner), however, that exist in significant numbers in the national economy that Brooks could perform.   (Tr. 20.)   The ALJ therefore concluded that Brooks has not been under a disability, as defined in the Social Security Act, from October 14, 2011, through the date of the decision.   (Tr. 21.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits filed on August 8, 2011, the claimant is not
> disabled at any time since October 14, 2011, his amended onset date
> of disability, under sections 216(i) and 223(d) of the Social Security
> Act.

(Tr. 30.)

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

As noted above, Brooks argues that the Appeals Council erred in denying his request for review when new and material evidence was submitted to the Appeals Council from treating cardiologist Dr. Pervez Alvi, because Brooks believes Dr. Alvi's report supports a finding of disability.

On June 24, 2013, Dr. Alvi completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. 454-57.) Dr. Alvi expressed the opinion that Brooks could frequently and occasionally lift and carry ten pounds; stand or walk less than two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; push or pull, reach, handle, finger, and feel an unlimited amount; frequently crouch, crawl, and stoop; and occasionally climb, balance, and kneel. (Tr. 454-56.) As support for his findings, Dr. Alvi stated that Brooks had a heart attack in 2011 and required a coronary artery stent. (Tr. 455.)

Brooks states that Dr. Alvi's statement was submitted electronically to the SSA on August 22, 2013, two days after the decision of the ALJ. (Doc. 13 at 8.) The ALJ did not, therefore, have this evidence before her when she made her determination. Brooks submitted Dr. Alvi's statement to the Appeals Council. (Tr. 4-5.) Brooks argues that the Appeals Council erred in

denying his request for review when Dr. Alvi's statement supports his allegation of disability.

The Appeals Council will consider new and material evidence where it relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. § 404.970(b). New and material evidence submitted to the Appeals Council which relates to the period before the date of the ALJ's decision becomes part of the administrative record. *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (application for disability benefits remains in effect only until the issuance of "hearing decision" on that application, so evidence submitted to appeals council cannot affect the validity of the ALJ's determination if evidence is of treatment claimant received after issuance of ALJ's opinion); *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007); *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). To be material, the evidence must be "non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied" and must not concern "subsequent deterioration of a previously non-disabling condition." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). *See also Rehder v. Apfel*, 205 F.3d 1056, 1061 (8th Cir. 2000).

Once it is clear that the Appeals Council has considered newly submitted evidence, the reviewing court does not evaluate the Council's decision to deny review based on the new evidence; rather, the role of the court is limited to deciding whether the ALJ's determination is supported by substantial evidence on the record as a whole, including new evidence submitted after the determination was made. *See Davidson*, 501 F.3d at 990 ("Where, as here, the Appeals Council considers new evidence but denies review, we must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence."). This means the Court "must speculate to some extent on how the [ALJ] would have weighed the

newly submitted reports if they had been available for the original hearing," which has been noted to be a "peculiar task for a reviewing court." *Riley v. Shalala,* 18 F.3d 619, 622 (8th Cir. 1994).

In the present case, the Appeals Council stated that it had considered the additional evidence, and found that it did not provide a basis for changing the ALJ's decision. (Tr. 1-2.) Thus, the Court will determine whether the ALJ's decision was supported by substantial evidence in the record, including the evidence submitted to the Appeals Council.

Brooks contends that Dr. Alvi's opinion supports a more restrictive RFC than that found by the ALJ, and therefore is consistent with Brooks' allegations of disability. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart,* 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000)). *See also Anderson v. Shalala,* 51 F.3d 777 (8th Cir. 1995).

In determining Brooks' RFC, the ALJ first found that Brooks' complaints of disabling symptoms were not credible. (Tr. 17.) Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

The ALJ stated that Brooks' activities of daily living are not limited to the extent one would expect given his complaints of disabling limitations. (Tr. 17.) Specifically, the ALJ noted that Brooks testified that he drives three to four times per week without restriction, works on old cars sanding the bodies, has no difficulty caring for his personal needs, and performs light housework. (Tr. 17, 32-33, 40-43.) The ALJ found that Brooks' activity level, particularly his

hobby of working on old cars, was inconsistent with his allegations of disabling impairments and indicates that he is capable of a reduced range of light work. (Tr. 17-18.) Significant daily activities may be inconsistent with claims of disabling pain. *See Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (stating that "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of disabling pain").

The ALJ next pointed out that there was evidence Brooks stopped working for reasons not related to his alleged disability. (Tr. 18.) Brooks testified and stated in his work activity report that he stopped working because his employer's plant shut down. (Tr. 18, 164, 33-34.) In his disability report, Brooks answered the question of why he stopped working at his last job as follows: "I was working at the rock Quarry and then the plant got shut down due to lack of demand." (Tr. 179.) The ALJ properly considered the fact that Brooks stopped working for reasons other than his alleged disability when assessing his credibility. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); *Depover v. Barnhart*, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged).

The ALJ also found that Brooks' subjective complaints were out of proportion to the objective medical evidence. Brooks testified that he experienced chest pain a couple times a week, which are usually caused by stress or increased activity. (Tr. 38, 45.) He stated that exposure to heat can also cause his chest pain. (Tr. 45.) Brooks stated that he lies down for about thirty minutes when he experiences chest pain. (Tr. 38.) Brooks testified that he also experiences shortness of breath when he is under stress. *Id.* He stated that he is able to sit for

twenty to twenty-five minutes before his feet start to swell. (Tr. 39.) Brooks stated that he has not told his doctors about the swelling in his feet, nor has he told them about swelling he experiences in his hands. (Tr. 40.) Brooks testified that he is able to stand for approximately one hour, and that he is able to walk about one block. (Tr. 39.) Brooks stated that he did not know how much weight he could lift, but indicated that he is able to lift his ten-pound dogs without difficulty. (Tr. 51.) Brooks testified that he takes two-to-three-hour-long naps in the afternoon because he feels "exhausted." (Tr. 49.)

The medical evidence reveals Brooks underwent a stent placement performed by Dr. Bassem Mikhail on October 14, 2011. (Tr. 287.) It was noted that Brooks had a history of CAD and prior myocardial infarction. (Tr. 287, 290.) Brooks had been treated by Dr. Roderick Bartlett, but he stopped seeing him in 2009. (Tr. 290.) Brooks had been taking medications when he saw Dr. Bartlett, but was no longer taking any medications. *Id.* Brooks also reported that he smoked one to two packages of cigarettes per day. (Tr. 290.) Brooks presented to the emergency room with complaints of chest pain on October 14, 2011, and cardiac catheterization confirmed the presence of ninety percent occlusion of the distal right coronary artery. (Tr. 287.) Brooks had normal left ventricular function. *Id.* Brooks underwent stent placement of the right coronary artery "secondary to noncompliance," with "excellent result." (Tr. 290.) Brooks did not have further chest pain after the stent placement. (Tr. 287.) Upon discharge, he was prescribed medication, counseled to stop smoking, and instructed to follow-up with Drs. Mikhail and Bartlett. *Id.*

Brooks presented to Pervez Alvi, M.D. on November 16, 2011, to establish cardiac care. (Tr. 421.) Brooks complained of chest pain lasting a few seconds, and fatigue. *Id.* Brooks reported that he still smoked, and that he was "laid off work so just sits around the house." *Id.*

Dr. Alvi stated that Brooks had been doing well. *Id.* Brooks' physical examination revealed no abnormalities. (Tr. 423.) Dr. Alvi advised Brooks to quit smoking and recommended cardiac rehabilitation. (Tr. 424.)

Brooks presented to the Hannibal Regional Hospital on February 26, 2012, with complaints of chest pain that began that day. (Tr. 352.) Brooks underwent x-rays and an echocardiogram, which were normal. (Tr. 356.) Brooks then reported that the chest pain had resolved, and left against medical advice. (Tr. 357.)

Brooks saw Dr. Alvi for follow-up on March 1, 2012. (Tr. 417-20.) Brooks had not had recurrence of chest pain, but reported feeling fatigued. (Tr. 417.) Dr. Alvi noted no abnormalities on physical examination. (Tr. 419.) Dr. Alvi counseled Brooks on smoking cessation and ordered a routine echocardiogram. (Tr. 420.)

Brooks underwent an echocardiogram on March 28, 2012, which was normal. (Tr. 370-71.) Specifically, it noted an appropriate response to treadmill exercise, good functional aerobic capacity, and a normal ejection fraction of the left ventricle. *Id.* The overall echocardiogram revealed a low probability for clinically significant CAD. (Tr. 371.)

On April 2, 2012, Brooks saw Dr. Alvi for follow-up, at which time his physical examination revealed no abnormalities. (Tr. 415.) Dr. Alvi counseled Brooks regarding smoking cessation. (Tr. 416.)

Brooks presented to the Hannibal Regional Hospital on July 13, 2012, with complaints of left-sided chest pain that radiated up into his neck and down his left arm for two hours. (Tr. 393.) Brooks was still smoking. *Id.* Brooks' physical examination revealed no abnormalities. *Id.* Brooks underwent x-rays, which were normal. (Tr. 397-98.) Brooks was discharged to home. *Id.*

The ALJ noted that Brooks has received limited treatment for his CAD, and that the record reveals Brooks has a history of treatment non-compliance with treatment. (Tr. 18.) This is supported by medical evidence discussed above, which indicates Brooks received sporadic treatment, he had stopped taking his cardiac medication at the time he underwent the stent placement, he left the hospital against medical advice in February 2012, and he continued to smoke despite being continually advised to quit smoking by is doctors. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (ALJ may properly consider noncompliance in determining claimant's credibility); 20 C.F.R. §§ 404.1530, 416.930 (unjustified failure to follow prescribed treatment is grounds for denying disability).

The ALJ acknowledged that Brooks has reported that he did not receive regular treatment from his cardiologist due to financial reasons. (Tr. 18, 293.) Brooks reported that he was receiving care at a free clinic. (Tr. 35.) The ALJ, however, stated that Brooks could have afforded at least some medical treatment if he had diverted funds spent on cigarettes. *Id.* This is a proper consideration. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) ("Although [Plaintiff] claims he could not afford such medication, there is no evidence to suggest that he…chose to forgo smoking three packs of cigarettes a day to help finance pain medication").

The ALJ concluded that Brooks' failure to seek regular treatment for his cardiac impairment, failure to comply with treatment, benign physical examinations, and normal diagnostic tests reveal that Brooks' impairments are not as severe as alleged and erode the credibility of his allegations. (Tr. 18.)

The ALJ next discussed the opinion evidence. The ALJ noted that state agency consultant Jeffrey Wheeler, M.D. reviewed Brooks' record on February 11, 2012. (Tr. 19, 338-44.) Dr. Wheeler expressed the opinion that Brooks could occasionally lift or carry twenty pounds,

frequently lift or carry ten pounds, stand or walk about six hours in an eight-hour workday, sit with normal breaks for about six hours in an eight-hour workday, and only occasionally climb, balance, stoop, kneel, crouch, or crawl. (Tr. 339-40.) Dr. Wheeler also found that Brooks should avoid concentrated exposure to extreme cold and heat. (Tr. 341.) Dr. Wheeler stated that Brooks' RFC was reduced to avoid anginal episodes, and that it was considered very conservative. (Tr. 343.) On April 11, 2012, state agency medical consultant Alan J. Coleman, M.D., reviewed Brooks' records and concurred with the RFC found by Dr. Wheeler. (Tr. 346.) The ALJ stated that he was according great weight to these opinions because Drs. Wheeler and Coleman are experts in SSA regulations, and their opinions are consistent with the record as a whole. (Tr. 19.) The ALJ properly evaluated this evidence. *See* 20 C.F.R. § 404.1527(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence).

The ALJ stated that, due to his history significant for CAD with stent placement in his right coronary artery, it was reasonable to conclude that Brooks' impairment would limit him to light work and result in restrictions on his ability to sit, stand, or walk for prolonged periods, climb, stoop, kneel, crouch, crawl, balance, and tolerate temperature extremes. (Tr. 19.) The ALJ added that, because Brooks experiences chest pain when he is under stress, his CAD would also result in him being limited to unskilled work in a low-stress work environment. *Id.* The ALJ made the following determination regarding Brooks' RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant must be able to alternate between sitting, standing, and walking every forty-five minutes for up to five minutes without leaving the workstation. He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure

> to temperature extremes.   The claimant is limited to simple,
> routine, and repetitive tasks.   He should not work at production rate
> work tasks, but should be in a low-stress work environment that
> does not require fast-paced work.   The claimant would need to take
> an additional break or have non-productive time of fifteen minutes
> twice per day on a consistent basis.

(Tr. 16.)

The ALJ's RFC determination is supported by the evidence in the record as a whole.   The RFC is more restrictive than the RFC found by the state agency physicians.   The ALJ considered Brooks' credible testimony regarding his limitations in including limitations to simple work in a low-stress environment, in limiting Brooks' exposure to temperature extremes, and in including a sit/stand option and break period.   The medical evidence of record, including treatment notes and objective testing, do not reveal greater limitations than those found by the ALJ.

The Court finds that Dr. Alvi's statement fails to supply a sufficient basis to overturn the ALJ's decision.   A treating source's opinion is not "inherently entitled" to controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).   To be entitled to such deference, Dr. Alvi's opinion must be well supported by, and not inconsistent with, other substantial evidence in the record.   *Myers,* 721 F.3d at 524 (citing 20 C.F.R § 404.1527(c)(2)).   Moreover, it must not be inconsistent with, or unsupported by, the physician's own treatment notes.   *Davidson,* 578 F.3d at 843.

The source statement completed by Dr. Alvi is merely a form statement, in which Dr. Alvi checked boxes indicating his opinion regarding Brooks' limitations.   (Tr. 454-57.)   When asked to set out the clinical findings supporting his conclusions, Dr. Alvi stated only that Brooks had a heart attack in 2011 and required a coronary artery stent.   (Tr. 455.)   Dr. Alvi did not cite any specific clinical findings supporting his opinions, nor did he indicate when he had last treated Brooks.   Notably, Dr. Alvi's most recent treatment notes in the record are dated April 2, 2012,

more than one year before the ALJ's decision. The checklist format of Dr. Alvi's opinion tends to hurt its evidentiary value. *Holstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). The ALJ would likely have discredited Dr. Alvi's opinion because it consisted of nothing more than conclusory statements.

None of Dr. Alvi's treatment notes support the presence of disabling limitations. At Brooks' first visit with Dr. Alvi in November 2011, Dr. Alvi noted that Brooks reported that he had been "laid off work so just sits around the house." (Tr. 421.) Dr. Alvi stated that Brooks was doing well at this visit, which took place only one month after the stent placement. *Id.* Dr. Alvi noted no abnormalities on physical examination. (Tr. 423.) Dr. Alvi similarly noted no findings on physical examination at Brooks' March 1, 2012 visit. (Tr. 417-20.) At Brooks' April 2, 2012 visit, Dr. Alvi noted no abnormalities on physical examination. (Tr. 415.) Dr. Alvi counseled Brooks regarding smoking cessation. (Tr. 416.)

Further, Dr. Alvi's source statement is not entirely inconsistent with the RFC found by the ALJ. Dr. Alvi found that Brooks could frequently and occasionally lift ten pounds, whereas the ALJ found that Brooks could frequently lift ten pounds and occasionally lift up to twenty pounds. Dr. Alvi expressed the opinion that Brooks could stand or walk less than two hours in an eight-hour workday, and sit less than six hours. The ALJ found that Brooks must be able to alternate between sitting, standing, and walking every forty-five minutes for up to five minutes without leaving the workstation, and that he would need to take an additional break or have non-productive time of fifteen minutes twice per day on a consistent basis. The ALJ limited Brooks to only occasional climbing, balancing, and kneeling consistent with Dr. Alvi's opinion, and found that Brooks had greater limitations in his abilities to stoop, crouch, and crawl than found

by Dr. Alvi. The ALJ also included a limitation regarding exposure to temperature extremes, and regarding a low-stress environment.

The ALJ's RFC determination remains supported by substantial evidence, even when considering Dr. Alvi's source statement. Some parts of Dr. Alvi's opinion are consistent with the ALJ's RFC finding. To the extent Dr. Alvi's opinion conflicts with the ALJ's RFC, the ALJ would have discredited Dr. Alvi's opinion for the reasons discussed above. Specifically, the ALJ found that Brooks' subjective allegations were not entirely credible because he stopped working for reasons other than his disability, he was not compliant with treatment recommendations, and the objective medical evidence does not support the presence of disabling symptoms. Dr. Alvi's source statement does not affect these findings, and offers no clinical findings to support the opinions. Dr. Alvi's treatment notes contained in the record do not support Brooks' allegations of disabling limitations.

After determining Brooks' RFC, the ALJ found that Brooks was unable to perform any past relevant work. (Tr. 19.) The ALJ properly relied on the testimony of a vocational expert to find that Brooks could perform other work existing in significant numbers in the national economy with his RFC, including light and unskilled jobs of laundry worker, office clerk, and cleaner. (Tr. 20, 54-57.) *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). Thus, the ALJ's decision finding Brooks not disabled is supported by substantial evidence.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2016.